UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE CO.;<br>USA CAPITAL REALTY ADVISORS,<br>LLC; USA CAPITAL DIVERSIFIED<br>TRUST DEED FUND, LLC; USA<br>CAPITAL FIRST TRUST DEED FUND,<br>LLC; and USA SECURITIES, LLC,<br><br>    Debtors.<br>_____<br>THE LENDERS PROTECTION GROUP;<br>CHARLES B. ANDERSON TRUST;<br>RITA P. ANDERSON TRUST; BALTES<br>CO.; KEHL FAMILY MEMBERS; and<br>MOJAVE CANYON, INC.,<br><br>    Appellants,<br><br>  v.<br><br>USA COMMERCIAL MORTGAGE CO.,<br>et al.,<br><br>    Appellees.<br>_____<br>DEBT ACQUISITION COMPANY OF<br>AMERICA V,<br><br>    Appellant,<br><br>  v.<br><br>USA COMMERCIAL MORTGAGE CO.,<br>et al.,<br><br>    Appellees. | 2:07-CV-00072-RCJ-GWF<br>2:07-CV-00160-RCJ-GWF<br><br>Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR<br><br>Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR<br><br>OPINION |

Presently before the Court is Appellee-Debtors' Emergency Motions to Dismiss Appeal (2:07-CV-00072-RCJ-GWF, Doc. #34; 2:07-CV-00160-RCJ-GWF, Doc. #2), filed on February 9, 2007.  Appellants the Lenders Protection Group; Charles B. Anderson Trust; Rita P. Anderson Trust; Baltes Co.; Kehl Family Members; and Mojave Canyon, Inc.; and Debt Acquisition Company of America V, LLC filed Oppositions (2:07-CV-00072-RCJ-GWF, Doc. #44; 2:07-CV-00160-RCJ-GWF, Doc. #7) on February 13, 2007.  Appellee-Debtors filed Replies (2:07-CV-00072-RCJ-GWF, Doc. #48; 2:07-CV-00160-RCJ-GWF, Doc. #9) on February 13, 2007.

**I. BACKGROUND**

This matter arises out of appeals from a Bankruptcy Court order confirming a plan of reorganization.  The Debtors are five related entities which were involved in the sale of fractional interests in loans and the servicing of those loans.  Debtor USA Commercial Mortgage Company ("USACM") was a Nevada corporation in the business of underwriting, originating, brokering, funding, and servicing commercial loans primarily secured by commercial and residential developments.  (Statement of Record ["SOR," 2:07-CV-00072-RCJ-GWF, Doc. #41], Ex. 1 at 23.)  USACM solicited individual investors to purchase fractional interests in loans.  (Id. at 24.)  As of the Petition Date, approximately 3,600 investors were named as lenders on one or more of USACM's serviced loans.  (Id.)  These lenders have been referred to as "Direct Lenders" throughout the bankruptcy proceedings.  Among the Direct Lenders are Debtors USA Capital Diversified Trust Deed Fund, LLC ("DTDF") and USA Capital First Trust Deed Fund, LLC ("FTDF").  (Id. at 24-25.)  DTDF and FTDF permitted investment in a fund that in turn would invest in USACM loans, as opposed to lenders directly investing in the loans.  (Id. at 25-26.)  Debtor USA Securities, LLC was a registered broker-dealer with the primary business of selling membership interests in FTDF.  (Id. at 27.)  Debtor USA Capital Realty Advisors LLC was the manager of DTDF and FTDF.  (Id.)

Prior to the Petition Date, USACM made monthly interest payments to Direct Lenders regardless of whether the borrowers on the particular loan had paid USACM. (Id. at 28.) The parties have referred to these payments on non-performing loans as "Prepaid Interest." (Id.) USACM used other sources of funds to cover the Prepaid Interest payments, such as principal paid on loans from other borrowers, deferred loan fees payable to USACM, and transfers from DTDF. (Id. at 28, 61.) The sources of funds from which USACM made Prepaid Interest payments were commingled in USACM's collection account along with payments USACM received from borrowers. (Id. at 61.) As of the Petition Date, USACM had paid approximately $39.5 million in Prepaid Interest to the Direct Lenders. (Id. at 28.) By April 2006, USACM did not have sufficient funds to make monthly payments to Direct Lenders and the Securities and Exchange Commission had initiated an investigation, leading Debtors to file for bankruptcy protection. (Id.)

Following the bankruptcy filing, the Board of Directors appointed Thomas J. Allison ("Allison") as the Chief Restructuring Officer for all five Debtors. (Id.) Allison terminated the employment of USACM insiders and investigated the Debtors' records. (Id. at 28-29.) Allison discovered a variety of improprieties, including the payment of Prepaid Interest, the collection of principal payments which USACM did not distribute to the appropriate Direct Lenders (referred to as "Unremitted Principle"), and other irregularities. (Id.) Allison also discovered USACM had not always charged the Direct Lenders for loan servicing fees due under the Loan Servicing Agreements ("LSAs") between USACM and the Direct Lenders. (Id. at 34-35.)

In May 2006, USACM filed a motion requesting permission to hold funds collected from borrowers until Allison could determine the proper recipients and holdback amounts. (Id. at 31.) The Bankruptcy Court granted the motion allowing USACM to hold the funds temporarily. (Id.) The Bankruptcy Court modified this order in October 2006 setting forth the procedures for future monthly distributions less certain holdbacks. (Id. at

32.)

The Debtors filed the Third Amended Joint Chapter 11 Plan of Reorganization ("Plan") on November 15, 2006. (SOR, Ex. 3.) The Plan has two features which are the focus of the present appeals, the handling of Prepaid Interest and the sale of USACM's LSAs.

With respect to Prepaid Interest, the Plan sets forth a "compromise" between USACM and the Direct Lenders. (Id. at 51-53.) As part of the compromise, USACM releases all claims against the Direct Lenders for surcharge, recharacterization of loans, and collection of service fees accrued pre-petition that remain unpaid. (Id. at 51-52.) In exchange for these releases, the debtors would retain claims for Prepaid Interest and Holdbacks which USACM collected but did not distribute as of the Plan's effective date and use the funds to satisfy other claims against the estate. (Id. at 52.) The Debtors would continue to net Prepaid Interest after the effective date from sums collected from borrowers until the Debtors' estate recovered an amount equal to the particular Direct Lender's Prepaid Interest. (Id.)

The Plan tolled the statute of limitations on causes of action to recover Prepaid Interest for two years to allow the Debtors to collect Prepaid Interest through this netting process rather than suing each Direct Lender, in the hopes that within two years, the Debtors would recover all or substantially all Prepaid Interest through payments received from borrowers. (Id. at 52-53.) After two years, the Debtors could pursue any remaining unrecovered Prepaid Interest through litigation. (Id.) The Plan also provided for a two percent Holdback from which USACM would retain its contractual servicing fees under the LSAs and would use a percentage of the Holdback to pay up to $605,000 in professional expenses. (Id. at 53.) Although the Plan termed these arrangements a compromise, the Plan made clear that "all Direct Lenders will be bound to the compromise provisions set forth herein, regardless of whether they vote to accept or reject the Plan, or [their class of

4

creditors] votes to accept or reject the Plan . . . ." (Id. at 51.)

With respect to the LSAs, the Plan contemplates the auction and sale of certain FTDF interests in loans plus USACM's rights to service loans pursuant to the LSAs. (Id. at 47.) The Plan provides that the Asset Purchaser[1] would take the LSAs "free and clear of all liens, Claims, encumbrances, rights of third parties and interests." (Id. at 47.) The Plan treats the LSAs as non-executory contracts, therefore the requirements of 11 U.S.C. § 365 regarding the steps a bankruptcy trustee must take to reject or assume and cure executory contracts would not apply. (Id. at 22, 45, 47, 57-58, 60-62, 75-76, Ex. A.)

On December 11, 2006, Appellant Lenders Protection Group ("LPG"), which consists of a group of Direct Lenders, timely filed an objection to confirmation of the Plan as it applied to USACM. (Opp'n to Appellee-Debtors' Emergency Mot. to Dismiss Appeal [2:07-CV-00072-RCJ-GWF, Doc. #44], Ex. A.) LPG raised eight objections to confirmation, asserting the Plan attempts to take lenders' property in the form of Prepaid Interest through confirmation rather than through an adversary proceeding in violation of Federal Rule of Bankruptcy Procedure 7001; the "compromise" is non-consensual; the Plan attempts to foreclose lenders' Unremitted Principal setoff rights without due process; the Plan improperly classifies creditor classes by failing to create a class of lenders who had received Prepaid Interest and had Unremitted Principal setoff claims; the Plan attempts to assign executory contracts without assumption and assignment; the voting process' integrity was compromised; the Plan attempts to recover service fees exceeding the amounts set forth in the LSAs; and the Plan fails to pursue valuable assets in the form of various causes of action. (Id.)

---

[1] Through an auction process, the successful bidder was Compass Partners, which agreed to pay approximately $67 million for certain assets as set forth in the Plan and the Asset Purchase Agreement. (Decl. of Annette W. Jarvis in Support of Joint Emergency Mot. to Quash Stay Pending Appeal [2:07-CV-00072-RCJ-GWF, Doc. #2].)

5

Appellants Charles B. Anderson Trust, Rita P. Anderson Trust, Baltes Company, Kehl Family Members and Mojave Canyon, Inc. ("JV Direct Lenders") filed an amended joinder in LPG's objections on December 14, 2006. (Id., Ex. B.) JV Direct Lenders requested the Direct Lenders' setoff rights be preserved and stated they did not object to selling the LSAs to the Asset Purchaser "so long as it is clear that there is no assumption and assignment that would suggest there has been a cure of the USACM defaults." (Id. at 2.)

Appellant Debt Acquisition Company of America V ("DACA"), a company that purchased Direct Lenders' interests in loans serviced by USACM and Unremitted Principal claims, also filed objections to Plan confirmation. (Appellee-Debtors' Emergency Mot. to Dismiss Appeal & Mem. of Law in Support Thereof [2:07-CV-00160-RCJ-GWF, Doc. #2], Exs. 3 & 9.) Specifically, DACA objected that the LSAs are executory contracts which the Debtors either had to assume and cure or the contracts were rejected under the Plan. (Id., Ex. 9) DACA argued that if the Debtors assumed the LSAs, the Debtors were required to cure prior defaults by paying in full Unremitted Principal. (Id.) DACA further argued that if the LSAs were rejected under the Plan, then the Asset Purchaser would take the assignment of the LSAs subject to the Direct Lenders' rights arising from USACM's breaches of contract. (Id.) DACA also objected to the non-consensual "compromise" of its contractual rights in the LSAs. (Id.)

DACA supported its objections with the declaration of Howard Justus ("Justus"), DACA's President. (Id., Ex. 3.) Justus averred that DACA purchased fifty-two Direct Lenders' interests in USACM-serviced loans totaling approximately $4.2 million in principal. (Id.) Justus also stated DACA purchased fifteen Unremitted Principal claims totaling $399,222.50. (Id.) Finally, Justus noted that DACA does not agree to the "compromise" in the Plan. (Id.) Attached to the Justus declaration is a listing of the Direct Lender interests and Unremitted Principal claims DACA purchased. (Id., Exs. A & B.)

1 At the December 19, 2006 hearing on confirmation, LPG, JV Direct Lenders, and DACA orally argued in support of their objections. (SOR, Ex. 17, Attach. 1.) The Bankruptcy Court overruled these objections, approved the Plan, and entered findings of facts and conclusions of law and a confirmation order on January 8, 2007. (SOR, Exs. 15 & 16.)

The LPG filed a notice of appeal on January 16, 2007. (Opp'n to Appellee-Debtors' Emergency Mot. to Dismiss Appeal, Ex. K.) The Notice of Appeal identified the appellants as "The Lenders Protection Group, a group of investors/lenders in USA Commercial Mortgage Company ('USACM'), as identified on the Statement of The Law Offices of Alan R. Smith Pursuant to Bankruptcy Rule 2019 filed herein on December 6, 2006, and as supplemented thereafter . . . ." (Id.; see also Exs. E & F for LPG's Rule 2019 statements.) On January 17, 2007, Appellants LPG and the JV Direct Lenders filed an Amended Notice of Appeal which identified LPG in the same manner but added as Appellants the JV Direct Lenders, identified as "Charles B. Anderson Trust, Rita P. Anderson Trust, Baltes Company, Kehl Family Members and Mojave Canyon, Inc. . . . ." (Opp'n to Appellee-Debtors' Emergency Mot. to Dismiss Appeal, Ex. L; see also Exs. G-I for JV Direct Lenders' Rule 2019 statements.) Appellant DACA filed a Notice of Appeal on January 17, 2007. (Notice of Appeal [2:07-CV-00160-RCJ-GWF, Doc. #3].)

The appeals initially went to the United States Bankruptcy Panel of the Ninth Circuit ("BAP"),[2] but Appellees opted to have the appeals heard in this Court. (Certificate

---

[2] The BAP granted Appellants' motion for a stay of the Confirmation Order pending appeal. (Joint Emergency Mot. to Quash Stay Pending Appeal, Vacate Temporary Stay Order & Refer Stay Mot. to the Bankr. Ct. [2:07-CV-00072-RCJ-GWF, Doc. #2], Ex. 1.) Upon transfer to this Court, the LPG and JV Direct Lenders' appeal originally was assigned to the Honorable Roger L. Hunt, who reassigned the case to the undersigned on January 19, 2007 for joint administration with the DACA appeal and another appeal filed by the Debtors' former insiders. (Min. Order [2:07-CV-00072-RCJ-GWF, Doc. #7]; see also 2:07-CV-00138-RCJ-GWF.) On Appellees' motion, the Court vacated the BAP's order granting a stay pending appeal. (Mins. of Proceedings [2:07-CV-00072-RJC-GWF, Doc.

7

of Bankr. Record on Appeal [2:07-CV-00072-RCJ-GWF, Doc. #24]; Notice of Transfer of Appeal to Dist. Ct. [2:07-CV-00160-RCJ-GWF, Doc. #1].)  After the BAP transferred the appeals to this Court, Appellants LPG and JV Direct Lenders filed a Certificate of Interested Parties which identified by name parties represented by LPG and JV Direct Lenders.  (Opp'n to Appellee-Debtors' Emergency Mot. to Dismiss Appeal, Ex. M.)

Appellees move to dismiss the appeals, arguing Appellants lack standing because they are not "persons aggrieved" by the confirmation order.  Appellees contend Appellants are not persons aggrieved because they failed to preserve their rights below by objecting with supporting evidence.  Appellees also argue Appellants LPG and some of the JV Direct Lenders, the Kehl Family Members, lack standing because their Notice of Appeal does not identify the appealing parties by name as required by Federal Rule of Bankruptcy Procedure 8001.

Appellants respond they objected below, as demonstrated by their filed objections and oral arguments at the confirmation hearing.  Appellants contend they need not have supported their objections with evidence beyond that which already was before the Bankruptcy Court because their objections primarily raised legal issues.  As for the Notice of Appeal issue, Appellants LPG and JV Direct Lenders argue Appellees' reading of Bankruptcy Rule 8001 is overly technical and Appellants complied with the Rule by collectively identifying Appellants and referencing the Rule 2019 statements filed in the Bankruptcy Court.  Appellants also note they filed a Certificate of Interested Parties in this Court identifying by name all Appellants.  Appellants thus argue Appellees received notice of the names of all appealing parties.

///

///

---

#20]; Order Granting Joint Emergency  Mot. to Quash Stay Pending Appeal, Vacate Temporary Stay Order & Refer Stay Mot. to the Bankr. Ct. [2:07-CV-00072-RCJ-GWF, Doc. #23].)

## II. DISCUSSION

### A. Jurisdiction

The Court has jurisdiction over appeals from a bankruptcy court's final order. 28 U.S.C. § 158(a)(1). A confirmation order is a final order subject to appeal. See In re Frontier Props., Inc., 979 F.2d 1358, 1362 (9th Cir. 1992) ("A final decision is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." (quotation omitted)); In re Interwest Bus. Equip., Inc., 23 F.3d 311, 315 (10th Cir. 1994) (holding order confirming plan of reorganization is a final, appealable order).

### B. Standing as a Person Aggrieved

To have standing in a bankruptcy case, the appellant must be "a 'person aggrieved' by the bankruptcy court's order." In re P.R.T.C., Inc., 177 F.3d 774, 777 (9th Cir. 1999). An appellant is aggrieved if the bankruptcy court's order directly and adversely pecuniarily affects the appellant by "diminish[ing] the appellant's property, increas[ing] its burdens, or detrimentally affect[ing] its rights." Id. (citing Fondiller v. Robertson (In Matter of Fondiller), 707 F.2d 441, 442 (9th Cir. 1983)). Additionally, the appellant usually must attend and object below to be an aggrieved person. In re Commercial W. Fin. Corp., 761 F.2d 1329, 1334-35 (9th Cir. 1985). Whether an appellant has standing as a person aggrieved is a question of fact for the Court. In re Parker, 139 F.3d 668, 670 (9th Cir. 1998).

The Court finds Appellants are "persons aggrieved" by the Bankruptcy Court's confirmation order. Appellants filed objections to Plan confirmation and attended the confirmation hearing at which they orally argued their objections. Additionally, the confirmation order directly and adversely affects Appellants pecuniarily.

///
///
///

Appellants' purported failure to comply with Local Rule of Bankruptcy Procedure 9014(d)(1),[3] which requires supporting affidavits for oppositions to motions, does not deprive them of standing to appeal. Appellees cite no authority for the proposition that where a party attends and objects below but the objection purportedly violates a local rule as to the form of evidence, the party is not a person aggrieved for appeal purposes. Further, affidavits may not be required for every motion or opposition, as some motions will raise only questions of law rather than questions of fact. When a party seeks to controvert factual issues, he must file supporting affidavits which conform to certain format and content requirements.[4] However, the Rule does not require every party to file an affidavit regardless of the nature of its arguments or else lose standing to appeal.

Additionally, Appellants base at least one objection on evidence in the record below which raises primarily a legal question. Appellants challenge whether the Plan can force a non-consensual compromise on the Direct Lenders who voted against Plan confirmation or who filed objections to confirmation. Appellants objected to the compromise and its non-consensual application to them below and Appellants raise on appeal the legal question of whether a plan that purports to bind non-consenting parties to a compromise is confirmable. The Court will not address on a motion to dismiss whether Appellants may suffer a failure of proof on the merits as to certain claims or theories.

Appellants also challenged below and raise on appeal the Plan's treatment of the LSAs as non-executory contracts. Appellants contend the LSAs are executory contracts which require either assumption and cure or rejection under 11 U.S.C. § 365. The LSAs

---

[3] Local Rule 9014(d)(1) provides that an opposition to a motion "must be supported by affidavits or declarations that conform to the provisions of subsection (c) of this rule."

[4] Appellees' argument regarding Local Rule 9014 is particularly unavailing with respect to Appellant DACA, which filed a supporting affidavit setting forth DACA's pecuniary interest in Direct Lender loans and Unremitted Principal claims and which stated DACA did not consent to the compromise.

generally were uniform in their terms and the Bankruptcy Court had a representative example of an LSA as part of the record before it when it determined the LSAs were non-executory. (SOR, Ex. 17, Attach. 1 at 193-95.) Appellants' arguments regarding the LSAs raise the legal question of the nature of the contracts. The classification of the LSAs as non-executory affects Appellants' contractual rights because if the contracts are executory, the Debtors would have to either assume and cure any breaches or reject the contracts.

Because Appellants attended and objected below and the confirmation order directly and adversely affects them pecuniarily, Appellants have standing to appeal. The Court therefore will deny Appellees' motion to dismiss for lack of standing on this basis.

**C. Rule 8001–Notice of Appeal**

As noted above, Appellees argue that Appellants LPG and Kehl Family Members lack standing because "the Notice of Appeal and the Amended Notice of Appeal fail to name LPG members or the 'Kehl Family Members.'" (Appellee-Debtors' Emergency Mot. to Dismiss Appeal, at 16.) Because Appellees' argument concerns Appellants' Notices of Appeal from the bankruptcy court to this Court, Federal Rule of Bankruptcy Procedure Rule 8001, and not Federal Rule of Appellate Procedure 3(c), provides the applicable guidance in this case. In re Cascade Roads, Inc., 34 F.3d 756, 761 (9th Cir. 1994) (citing In re Case, 937 F.2d 1014, 1021 (5th Cir. 1991)).

Rule 8001 provides in pertinent part: "The Notice of appeal shall . . . contain the names of all parties to the judgment, order, or decree appealed from . . . ." Fed. R. Bankr. P. 8001(a). On its Notice of Appeal, Appellant LPG identified the appellants as "The Lenders Protection Group, a group of investors/lenders in USACM, as identified on the Statement of the Law Offices of Alan R. Smith Pursuant to Bankruptcy Rule 2019 filed herein on December 6, 2006, and as supplemented thereafter . . . ." (Opp'n to Appellee-Debtor's Emergency Mot. To Dismiss Appeal, Ex. K.) Appellants LPG and JV Direct Lenders filed an Amended Notice of Appeal identifying Appellant LPG in the same manner

described above and adding the JV Direct Lenders, identified in part as the Kehl Family Members.  (Id., Ex. K.)  Thus, although the Notice of Appeal specifically listed Appellants LPG and Kehl Family Members, it did not list each separate entity or individual making up those two groups.  However, shortly after filing their Notice of Appeal, and within the time required by this Court, Appellants filed their Certificate of Interested Parties.

As both Appellants and Appellees acknowledge in their pleadings, a dearth of case law exists on this issue.  Several courts have held that failure to name an appellee in a notice of appeal does not deprive a district court of jurisdiction because Rule 8001(a) does not affect the validity of the appeal.  See, e.g., In re Enron Corp., No. 02 Civ. 5638 (BSJ), 2003 U.S. Dist. LEXIS 1442, at *9-*10 (S.D.N.Y. Feb. 3, 2003); Vergos v. Uncle Bud's, Inc., No. 3-97-0296, 1998 U.S. Dist. LEXIS 22443, at *7-*8 (M.D. Tenn. Aug. 17, 1998); In re Hilligoss, 849 F.2d 280, 282 (7th Cir. 1988).  The Court located one case wherein the Tenth Circuit stated that failure to name an appellant in a notice of appeal deprives the district court of jurisdiction to entertain the appeal as to the unnamed appellant.  See Storage Tech. Corp. v. U.S. Dist. Court for the Dist. of Colo., 934 F.2d 244, 247-48 (10th Cir. 1991).

In Storage Tech., the Tenth Circuit held that Rule 8001(a) required an appellant to list each individual appellant by name because "the requirements for filing a notice of appeal under Bankruptcy Rule 8001(a) are more strict than those of Fed. R. Civ. P. 3(c)."  Id. at 247.  While the Ninth Circuit has not decided this issue, it has implied that Rule 8001 is less rigid than Fed. R. Civ. P. 3(c).  See In re Cascade Roads, Inc., 34 F.3d 756, 761 (9th Cir. 1994) (citing In re Case, 937 F.2d 1014, 1021 (5th Cir. 1991)).  However, even applying the Tenth Circuit's strict interpretation, Appellants have complied with Rule 8001(a).  In Storage Tech., the court held that although Rule 8001 required an appellant to specifically list "each and every party," an appellant could comply with this requirement by naming the relevant parties "in the notice of appeal *or* in a functionally equivalent

12

document properly listing the appealing parties and filed within the appeal period." 934 F.2d at 248 (emphasis added).  The court then noted that the appellants neither listed each party in the notice of appeal nor filed any other document listing the individual parties.  Id.  In this case, Appellants listed LPG and Kehl Family Members as Appellants in their Notice of Appeal, and they filed their Certificate of Interested Parties within the appeals period wherein they specifically listed each individual or entity making up both LPG and the Kehl Family Members.  Therefore, Appellants have filed a notice of appeal and a "functionally equivalent document" listing each appealing party.  Appellees contend that it is not objectively clear who the LPG members or the Kehl Family Members are.  However, the Certificate of Interested Parties unambiguously lists each member of Appellants LPG and Kehl Family.  The Certificate further states that the parties identified as interested are the appealing parties.  Thus, Appellees cannot seriously assert they have been prejudiced.  Accordingly, even under the strict interpretation that Appellees advocate, Appellants have complied with both the spirit and letter of Rule 8001(a).

Pursuant to the above analysis, Appellants LPG and Kehl Family Members satisfied the notice-of-appeal requirements under Rule 8001(a).  The Court therefore denies Appellees' Motion to Dismiss for lack of standing on this basis.

///
///
///
///
///
///
///
///
///

**III. CONCLUSION**

     IT IS THEREFORE ORDERED that Appellee-Debtors' Emergency Motion to Dismiss Appeal (2:07-CV-00072-RCJ-GWF, Doc. #34) is hereby DENIED.

     IT IS FURTHER ORDERED that Appellee-Debtors' Emergency Motion to Dismiss Appeal (2:07-CV-00160-RCJ-GWF, Doc. #2) is hereby DENIED.

DATED: MAY 22, 2007.

_____  
Robert C. Jones  
United States District Judge

_____  
Philip M. Pro  
United States District Judge